# STATE OF MICHIGAN

# COURT OF APPEALS

MARCUS SNYDER,

       Plaintiff-Appellee,

v

MICHIGAN ASSIGNED CLAIMS PLAN,

       Defendant-Appellant.

UNPUBLISHED
January 17, 2017

No. 329779
Oakland Circuit Court
LC No. 2014-142743-NI

Before: TALBOT, C.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the order denying its motion for summary disposition. We reverse and remand for entry of an order granting summary disposition in favor of defendant.

This case arises from injuries sustained by plaintiff when he was hit by a "mud bog" operated by Jason Boyd (Jason). The sole issue presented on appeal is whether the mud bog constituted a "motor vehicle" under the no-fault act, MCL 500.3101 *et seq*. Defendant argues that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(10) because there was no genuine issue of material fact with regard to whether the mud bog constituted a motor vehicle as defined in the no-fault act, and defendant was entitled to judgment as a matter of law. We agree.

We review de novo a trial court's decision on a motion for summary disposition. *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014). "The motion for summary disposition 'tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. (citation omitted). " 'A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), we examine " 'affidavits, pleadings,

---

[1] *Snyder v Mich Assigned Claims Plan*, unpublished order of the Court of Appeals, entered December 29, 2015 (Docket No. 329779).

depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion.' " *Id*. (citation omitted).

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). The no-fault act defines the term "motor vehicle" as follows:

> "Motor vehicle" means a vehicle, including a trailer, that is operated or designed for operation on a public highway by power other than muscular power and has more than 2 wheels. Motor vehicle does not include any of the following:
>
> > (*i*) A motorcycle.
> >
> > (*ii*) A moped.
> >
> > (*iii*) A farm tractor or other implement of husbandry that is not subject to the registration requirements of the Michigan vehicle code under section 216 of the Michigan vehicle code, 1949 PA 300, MCL 257.216.
> >
> > (*iv*) An ORV.
> >
> > (*v*) A golf cart.
> >
> > (*vi*) A power-driven mobility device.
> >
> > (*vii*) A commercial quadricycle. [MCL 500.3101(2)(h).]

An off-road vehicle, or ORV, is defined as follows:

> "ORV" means a motor-driven recreation vehicle designed for off-road use and capable of cross-country travel without benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain. ORV includes, but is not limited to, a multitrack or multiwheel drive vehicle, a motorcycle or related 2-wheel, 3-wheel, or 4-wheel vehicle, an amphibious machine, a ground effect air cushion vehicle, an ATV as defined in [MCL 324.81101], or other means of transportation deriving motive power from a source other than muscle or wind. ORV does not include a vehicle described in this subdivision that is registered for use upon a public highway and has the security described in [MCL 500.3101 or MCL 500.3103] in effect. [MCL 500.3101(2)(j).]

In this case, the evidence in the record establishes that the mud bog was never operated on a public highway. Additionally, the undisputed evidence in the record establishes that the mud bog was not designed for operation on a public highway. In *Apperson v Citizens Mut Ins Co*, 130 Mich App 799, 800; 344 NW2d 812 (1983), the plaintiff was injured when a wheel fell off a vehicle during a "street stock" car race and hit him. The issue presented in the case was whether the "street stock" vehicle was a motor vehicle within the meaning of the no-fault act. *Id*.

-2-

With regard to whether the vehicle that hit the plaintiff was operated or designed for operation upon a public highway, this Court outlined the various changes made to vehicles to convert them into "street stock" racing cars. *Id*. at 801. The affidavits submitted by the defendant established that the "street stock" vehicles were required to have all outside lights and all glass except the windshield removed, were required to be equipped with only one seat, and were required to have a full roll cage. *Id*. at 801-802. The cars also lacked windshield wipers, turn signals, outside mirrors, and exhaust pipes. *Id*. This Court concluded, "We believe it is entirely logical that a vehicle which was originally designed for use upon public highways can be modified to such a degree that it loses its status as a 'motor vehicle' . . . ." *Id*. This Court held that the "street stock" car that injured the plaintiff was not designed for use on a public highway and did not constitute a motor vehicle. *Id*.

Recently, in *Gividen v Bristol West Ins Co*, 305 Mich App 639, 644; 854 NW2d 200 (2014), this Court concluded that a modified 1976 Jeep did not constitute a motor vehicle under the no-fault act. In *Gividen*, the plaintiff was driving an off-road vehicle when it collided with a modified 1976 Jeep driven by a nonparty to the lawsuit. *Id*. at 641. The plaintiff was not covered by a no-fault insurance policy, and the Jeep was covered by an insurance policy purchased in Texas. *Id*. This Court addressed the issue whether the Jeep was a motor vehicle under the no-fault act. *Id*. at 642. This Court stated that the undisputed evidence in the case established that the modifications made to the Jeep converted the Jeep into an off-road vehicle. *Id*. at 643. This Court outlined the modifications made to the Jeep:

> [The driver of the Jeep] testified that at the time of the accident, the headlights, taillights, turn signals, speedometer, and odometer on the Jeep were not "hooked up." The original metal shell had been removed from the Jeep and replaced with a fiberglass shell and, except for the steering column, ignition, and brakes, the wiring had not been reconnected. In addition, the Jeep did not have doors or a rearview mirror. Finally, the Jeep was equipped with a roll bar and had expensive tires that were impractical for driving on a paved road because the tires would have been torn up and provided a "bumpy" ride. [*Id*.]

This Court concluded that "[b]ecause this evidence established that the Jeep had been modified to the extent that it was no longer 'designed for operation upon a public highway,' the Jeep did not qualify as a 'motor vehicle' under the no-fault act at the time of the accident." *Id*. (citations omitted). Therefore, there was no genuine issue of material fact with regard to whether the Jeep was a motor vehicle, and the plaintiff was not entitled to personal protection insurance (PIP) benefits under the no-fault act. *Id*. at 644.

The modifications made to the vehicle in this case were as extensive as the changes made to the vehicles in *Apperson* and *Gividen*. Jason and his wife, Jessica Boyd, provided deposition testimony outlining the modifications that were made to the vehicle.[2] While the mud bog still

---

[2] Plaintiff contends that the differences in the testimony of Jason and Jessica establish a genuine issue of material fact with regard to the modifications made to the mud bog. However, Jason and Jessica provided consistent testimony regarding the modifications, and their testimony differed

had doors and windows, the vehicle lacked headlights, working taillights, side-view mirrors, turn signals, a speedometer, an odometer, bumpers, a horn, and an exhaust system. Jason removed the original frame and replaced it with a larger frame from a farm truck. Jason also replaced the engine and transmission. He moved the radiator, fan, and battery to the back of the vehicle. The wiring was removed and replaced. The mud bog lacked an alternator, and Jason explained that the battery could only last one hour, at most, before it would drain. A protective bar was installed over the front grille of the vehicle, and Plexiglas and metal bars were installed on the back of the vehicle. In addition, Jason installed five-point racing harnesses in the front seats.

Jason also installed 40-inch "TSL Super Swamper Bogger" tires on the vehicle. Jason explained that the tires were not "road legal," and added that "if you drove them on the road it would shake you out of the vehicle." The gas tank was also replaced with a fuel cell that required racing fuel, and Jason explained that the mud bog "only gets probably a mile and a half to the gallon." Further, Jason welded the axles of the vehicle to permit both rear tires to spin at the same time. He explained that it was not safe to drive the vehicle on the road after he welded the axles together because "it could lock your gears up, your rear end up, and the next thing you know you're coming to a stop." Therefore, the undisputed evidence in the record establishes that the mud bog lacked basic safety features and that the changes made to the vehicle rendered it dangerous, if not impossible, to drive on a roadway. Accordingly, the vehicle was modified to such a degree that it was no longer designed for operation on a public highway. See MCL 500.3101(2)(h).

Instead, the modifications made to the vehicle rendered it an off-road vehicle. The parties do not dispute that the mud bog was motorized. Jason explained that a mud bog is "an off-road vehicle that people will go and play in the mud with, in big mud holes." Thus, the mud bog was a motor-driven recreation vehicle designed for off-road use in a mud pit. The mud bog was also capable of cross-country travel over natural terrain. Further, the vehicle lacked registration for use upon a public highway and lacked no-fault insurance. Therefore, the mud bog fell within the definition of an off-road vehicle and was excluded from the definition of a motor vehicle. See MCL 500.3101(2)(h) and (j).[3] Therefore, the vehicle did not constitute a motor vehicle, and plaintiff is not entitled to PIP benefits for the injuries he sustained during the accident. See *Gividen*, 305 Mich App at 644.

---

only with regard to the irrelevant issues of the origin of the mud bog parts and the sale of the mud bog following the incident. Therefore, plaintiff's contention is without merit.

[3] We also reject plaintiff's argument that Jason's criminal conviction for operating a motor vehicle while intoxicated causing serious injury, MCL 257.625(5)(a), indicates that the mud bog constituted a motor vehicle under the no-fault act. Jason's criminal conviction under the Michigan Vehicle Code MCL 257.1 *et seq*., has no bearing on the issue whether the mud bog was a motor vehicle as defined in the no-fault act.

Reversed and remanded for entry of an order granting summary disposition in favor of defendant. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra